IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AIKG, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CINCINNATI INSURANCE<br>COMPANY,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:20-CV-4051-TWT |

### OPINION AND ORDER

This is a breach of contract action seeking insurance coverage for business losses related to the COVID-19 pandemic. It is before the Court on the Defendant's Motion to Dismiss [Doc. 3]. For the reasons set forth below, the Court GRANTS the Defendant's Motion to Dismiss [Doc. 3].

### I.   Background

The Plaintiff AIKG, LLC operates an amusement business that offers indoor go-karting, video arcades, full-service dining, and other attractions at five locations in Georgia, Texas, and Florida. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 5.) The Plaintiff purchased two property insurance policies (the "Policies")—one for its Georgia and Texas locations and another for its Florida locations—from the Defendant Cincinnati Insurance Company. (Compl. ¶¶ 4–5.) The Policies were in effect between June 1, 2019, and June 1, 2020, (*id.*) and

insured against "direct 'loss'" to the Plaintiff's property, which is defined as "accidental physical loss or accidental physical damage." (*Id.* ¶¶ 57, 61.) In the event of a covered loss, the Policies provided Business Income, Extra Expense, Extended Business Income, Civil Authority, Ingress and Egress, and Dependent Property coverage. (*Id.* ¶¶ 46–51.) There was no coverage exclusion for loss due to virus. (*Id.* ¶ 67.)

The COVID-19 pandemic has upended the Plaintiff's business. As the public health crisis rapidly unfolded across the United States in March 2020, state officials in Georgia, Texas, and Florida ordered non-essential businesses, including restaurants and amusement operators, to cease in-person operations and later permitted them to reopen only under strict occupancy restrictions and sanitation requirements. (*Id.* ¶¶ 6–42.) Pursuant to these orders and health and safety concerns, the Plaintiff shut down all five of its locations on March 17, 2020. (*Id.* ¶ 7.) The Plaintiff then filed insurance claims under the Policies to recover financial losses stemming from the closures (*id.* ¶ 92), but the Defendant denied coverage on the ground that COVID-19 and government-mandated shutdowns had not caused direct physical loss or damage to the Plaintiff's property. (*Id.* ¶¶ 93–94.)

The Plaintiff initiated this action in the Superior Court of Cobb County, Georgia, on August 31, 2020, asserting three claims against the Defendant for breach of contract (Count I), statutory bad faith (Count II), and declaratory judgment (Count III). (*Id.* ¶¶ 95–107.) The Defendant removed the action to

this Court pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the Plaintiff seeks to recover losses in excess of $75,000. (Notice of Removal ¶¶ 5–8.) The Defendant now moves to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. (Def.'s Mot. to Dismiss, at 1.)

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting the plaintiff "receives the benefit of imagination" at the pleading stage). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need

only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

### III. Discussion

In its motion to dismiss, the Defendant argues that the Plaintiff has not alleged sufficient facts to bring its financial losses within the Policies' coverage. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 1.) According to the Defendant, the Plaintiff's allegations regarding the effects of COVID-19 on its business do not show "direct physical loss or damage to property," "as required for any coverage under the plain language of the Polic[ies] and Georgia law." (*Id.* (emphasis omitted).) The Plaintiff does not dispute that it must make this showing to obtain coverage; instead, it claims that it has sufficiently pleaded direct physical loss or damage in three ways: "1) COVID-19 is on AIKG's business property; 2) COVID-19 is in its buildings; and 3) COVID-19 is a recurring threat to AIKG's business, its employees, and its customers." (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 3.) In the Plaintiff's view, the presence of COVID-19 changes "property so that it is no longer safe to use," "tak[ing] what was a satisfactory piece of property and render[ing] it unsatisfactory[.]" (*Id.* at 6.)

Therefore, the operative question is whether COVID-19 contamination causes direct physical loss or damage to property. But first, the Court must determine which state's law to apply to this question. "Federal courts sitting in diversity apply the forum state's choice-of-law rules": in this case, Georgia.

*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Georgia "follows the traditional doctrine of *lex loci contractus*: contracts are governed as to their nature, validity and interpretation by the law of the place where they were made unless the contract is to be performed in a state other than that in which it was made." *Id.* (internal quotation marks and citation omitted). Here, the Policies were "made" in Georgia because they were delivered to the Plaintiff's headquarters there. *See id.* (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 16 n.5.) Further, the Policies are "to be performed" in Georgia, despite insuring some property in other states, because any insurance payments would also be made to the Plaintiff's Georgia headquarters. *See Boardman Petroleum*, 135 F.3d at 753. The Court thus applies Georgia law to this case.

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Hays v. Georgia Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111 (2012) (punctuation and citation omitted). Construction of the policy's terms are questions of law:

> The court undertakes a three-step process in the construction of the contract, the first of which is to determine if the instrument's language is clear and unambiguous. If the language is unambiguous, the court simply enforces the contract according to the terms, and looks to the contract alone for the meaning.

*American Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 750 (2011) (citation omitted). Unambiguous terms must be given effect "even if beneficial to the insurer and detrimental to the insured," and Georgia courts

"will not strain to extend coverage where none was contracted or intended." *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 215 (1998) (quotation marks and citation omitted). By Georgia statute, "the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2.

The parties agree that "direct physical loss or damage to" property is a requirement for coverage under the Policies. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 7–8; Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 2–3.) This Court has interpreted materially identical language in three other insurance cases seeking coverage for business losses due to COVID-19. *See Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289 (N.D. Ga. 2020); *K D Unlimited Inc. v. Owners Ins. Co.*, No. 1:20-cv-2163-TWT, 2021 WL 81660 (N.D. Ga. Jan. 5, 2021); *Restaurant Grp. Mgmt., LLC v. Zurich Am. Ins. Co.*, No. 1:20-cv-4782-TWT, 2021 WL 1937314 (N.D. Ga. Mar. 16, 2021). Those cases held that public health orders, COVID-19 contamination, and operational changes to reduce virus transmission do *not* constitute direct physical loss or damage to insured property. *See Henry's La. Grill*, 495 F. Supp. 3d at 1296–97; *K D Unlimited*, 2021 WL 81660, at *4; *Restaurant Grp. Mgmt.*, 2021 WL 1937314, at *6. The Court sees no reason to depart from its prior holdings, especially now that the Eleventh Circuit has affirmed the reasoning underlying those opinions. *See Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, slip op. at 6–7 (11th Cir. Aug. 31, 2021).

The Court looks to the Georgia Court of Appeals' decision in *AFLAC Inc.*

6

*v. Chubb & Sons, Inc.*, 260 Ga. App. 306 (2003), for guidance. The court there interpreted the phrase "direct physical loss or damage" to require "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Id.* at 308. Relying on *AFLAC*, courts in this district have refused to expand "direct physical loss" to include loss-of-use damages when the property has not been physically impacted in some way. *Johnson v. Hartford Fin. Servs. Grp., Inc.*, 510 F. Supp. 3d 1326, 1333 (N.D. Ga. 2021) (quoting *Northeast Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-cv-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014)). "To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy." *Northeast Ga. Heart Ctr.*, 2014 WL 12480022, at *6.

Here, the Plaintiff alleges one "direct physical loss" to property: that "[its] premises likely have been infected with COVID-19[.]" (Compl. ¶ 87.) As this Court and others have held, such a claim does not trigger coverage under Georgia law:

> [T]he alleged "property contamination due to the virus" does not alone indicate a "direct physical loss of or damage to" the covered premises. The phrases "loss of" and "damage to" "make it clear that coverage is predicated upon a change in the insured property resulting from an external event rendering the insured property, initially in a satisfactory condition, unsatisfactory." The change must be "actual," and the Plaintiffs' contamination allegations do not indicate an actual physical change occurred on the premises as the result of COVID-19.

*Restaurant Grp. Mgmt.*, 2021 WL 1937314, at *6 (citation omitted); *see also Johnson*, 510 F. Supp. 3d at 1334 (holding the mere presence of COVID-19 in dental offices did not cause "any modicum of physical damage that renders them unsatisfactory in any way"). Indeed, the virus "does not physically alter the appearance, shape, color, structure, or other material dimension of the property." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020). It can be eliminated by disinfecting surfaces or dies naturally within hours to days depending on temperature and sunlight exposure. *See* CDC, *Guidance for Cleaning and Disinfecting*, at 2 (Apr. 28, 2020).[1] The Eleventh Circuit recently agreed in an unpublished opinion, failing to "see how the presence of [virus] particles would cause physical damage or loss to the [insured's] property." *Gilreath Family & Cosmetic Dentistry*, No. 21-11046, slip op. at 6.

Therefore, the Court concludes that the Plaintiff has failed to allege sufficient facts to obtain coverage under the Policies. To trigger Business Income, Extra Expense, and Extended Business Income coverage, the Plaintiff must show direct physical loss or damage to property at its premises. (*See* Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, Ex. A at 31, 74 (Business Income),

---

[1] The Court may consider this document, which is attached to the motion to dismiss (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, Ex. F), because it is central to the Plaintiff's claims and its authenticity is undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Though not cited, the Plaintiff makes repeated reference to the contents of the document in its Complaint. (*See* Compl. ¶¶ 7, 29, 31, 88.)

32, 74 (Extra Expense), 33–34, 76 (Extended Business Income).) And to trigger Civil Authority, Ingress and Egress, and Dependent Property coverage, the Plaintiff must show direct physical loss or damage to property other than its own. (*See id.*, Ex. A at 32, 75 (Civil Authority), 77 (Ingress and Egress); *id.*, Ex. B at 5 (Dependent Property).) The Plaintiff cannot make these threshold showings based solely on the alleged presence of COVID-19 at its premises. If the Court were to grant recovery here, it would be purely for economic losses without any need to repair or replace damaged property at, or outside of, the Plaintiff's premises; the plain language of the Policies does not support such broad coverage.

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss [Doc. 3] is GRANTED.

SO ORDERED, this 7 day of September, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge